This case on the docket 2-15-0034 Before the State of Illinois, Plainton, Appaloosa The Terrence L. Steel Defendant's Cousin Arguing on behalf of the Defendant's Cousin Mr. Fletcher P. Hamill Arguing on behalf of the Plainton, Appaloosa Ms. Christian Schwing Good morning, Counsel. Good morning, Mr. Hamill. Whenever you are ready. Good morning, Your Honors. My name is Fletcher Hamill and I represent the Defendant Appaloosa, Terrence Steel. And please, the Court. Counsel. Your Honor, the issue in this case is whether a defense motion can toll the speedy trial statute for more than a month after the motion has been resolved. The answer to this question is actually rather straightforward and has been answered by this Court several times. A motion, it does not. A motion to, a defense motion can only toll the speedy trial statute to the extent that it is required to be resolved. And once the motion is resolved, it no longer tolls the speedy trial statute. Well, it's a little confusing from the briefs and from the counter arguments here. What date we're starting at? What date do you think that the defense's obligation is over? June 13th. I'm sorry, you're asking the date that this motion stops tolling the statute? Right. June 13th. Okay. And I do, I do think that there's some gray before June 13th, but it doesn't matter. The gray area that I think you're talking about is what happened when the motion's press comes up and then the May date, correct? That's correct. And, you know, you talk about a gray area. This is an abuse of discretion standard, correct? Correct. And would you also agree we look at the entire record, all of the proceedings, including the transcripts, what's said by the parties, in evaluating whether or not the trial court abuses discretion? Yes. And so on May 16th, the state offered this stack of documents and had informed the court that there was an agreement as to how to proceed. And the trial court thanked Mr. Carroll because he had agreed to this procedure where he actually responded to the court's comment and said, Judge, we don't want to tie up your weekend, basically telling the court this is going to be a long process. But then he pulled out from that on June 13th. He did. He withdrew that agreement. However, that agreement, that agreement doesn't toll the speed trial statute. Why not if it causes the court to be concerned about the additional work the court's going to have? At that point, there's no defense motion pending, other than there's only the state's motion. But there was still an oral motion. What did Mr. Carroll mean when he said, no, Judge, you're going to have to do it on your own and decide on your own? And he wanted to preserve the objection. What objection did he want to preserve? Well, he wanted to preserve his objection to the admission of his co-conspirator statements. He wanted a hearsay objection, essentially, to each and every one of them, arguing that either the individuals involved in these conversations were not part of a conspiracy or that these conversations themselves were not furthering the conspiracy. And the judge said to him on June 13th, I have to confess, when I got these, my understanding was I was going to have some response, and I held off reviewing all of these. I don't mind beginning today, but I'm telling you right now, I've not gone through what the state gave me since the court date. And then Mr. Carroll goes on to say that this is part of his strategy and it's a chess game. Well, the part that was his strategy was withdrawing his two remaining claims of motion unlimited, which are not related to the co-conspirator statements. The defendant objecting to a state motion to admit evidence does not total. I don't. One hundred percent, you are absolutely correct. But isn't the defendant is responsible for his attorney's conduct, correct? That's correct. So when a defense attorney offers to help the court go through this voluminous set of transcripts or conversations and then withdraws it, he bears no responsibility? Well, if the court going through the voluminous transcripts was in fact a cause of delay of trial, then perhaps that argument can be made. But when the court set the date, the court didn't know how quickly it was going to take. The court actually offered the state to make this, resolve their motion in seven days and did, in fact, resolve the motion in seven days. So June 20th, the state's motion was resolved. So the court was not concerned, at least not that concerned, that it was impossible for him to stay within that 17-day window as of June 13th. He didn't say impossible, but he did say he would have to move, quote-unquote, move heaven and earth to get the case set, correct? Correct, but he was willing to do it. Does the trial court have to do that in order to say that the delay is not attributable to the defendant? I think if the trial court is capable of trying a case within 120 days, I do think he is required to. If it's the court that causes it not to be tried. He had a trial date within the term, in January, well within the term. The defense motion caused the case to be taken out of the term or at least contributed to the delay that took the case out of the term. Under historical analysis, the defendant care is delayed to the next trial date is ordinarily attributable to the defendant. Why is this case different? Well, the precedent that the state cites involves situations where the defendant was, where first of all, the date was very close to the end of the speed trial term. And secondly, the defendant was solely responsible for making it impossible to try him within the term. And on two of the three cases, the actual trial was held within days. One was Friday to Monday. One was less than a week of the term. So these were situations, and there's a kind of equitable consideration, where the defendant did something, knocked it off the trial date, and then the court and the state came together and did try it as fast as they could. Let's talk about the court and what the court said here in this case. The court said, I have my first open date July 22nd, correct? He did say I'd move heaven and earth to try the case, but he looked at his calendar. He said he was looking at his calendar, and he has July 22nd, correct? Heaven and earth. Why is that? Why should the court have to move heaven and earth to try a defendant who's already caused the delay taking the case outside the term? The defendant was never the sole cause. It doesn't have to be the sole cause. It doesn't have to be the sole cause. And this is a complicated case, but the defendant does bear some responsibility for moving the case outside the term, correct? The motion to suppress you acknowledged that in your briefs. Yes, but the case was not going to go on January 14th. The state's motion was there, and in fact, up until the day that the defendant filed his motion, it couldn't even be litigated in the form that it was in. Didn't the state on January 14th say, Judge, I understand you're 8 or 9 inches, maybe not in so many words, but I'll work on a second offer of these conversations? So the state wasn't ready at that point either, correct? Correct, correct. And it took until April to decide even the first half of the state's motion, and that took until June 20th after this June 13th hearing for the judge to finally resolve the thing. And it was a huge motion, and needlessly huge, because they were asking for basically every single statement that they had recorded out of 17 people. And Mr. Carroll wanted a blow-by-blow ruling by the court prior to trial, correct? He said that, but that's his right. Well, not necessarily. You can have these hearings during trial. You can take each statement separately. You can take one statement at a time during a trial and have a sidebar. But Mr. Carroll, quite frankly, in my reading of the transcript, tell me if I'm incorrect, didn't he say that you're going to have to make a preliminary determination to the court, he's saying this to the court, part and parcel of the conspiracy. The best way to do it is to go through it one by one. And the court then asks him, you want me to go through all these without further input, your objection? And Mr. Carroll says, right. The state wanted that as well. Correct, but Mr. Carroll did as well, though. It doesn't matter if the state's solely responsible if the defendant contributes to the delay. I don't think the defendant had it. The thing is, this is a state's motion, and the defendant's objecting to the state's motion. The defendant doesn't have any obligation to make it easy for the state to litigate its motion. I think that goes beyond what the speedy trial statute requires of defense counsel. It requires defense counsel not to cause its own delays, and it also, you know, when defense counsel agrees to delays, then it holds it against them. But to say that defense counsel has to basically waive rights to make the state's motion easier to litigate, I think that's beyond what the statute requires. And I would point out that from March 3rd until June 13th, the only two defense claims that were pending were these trial objections to a shotgun and to some speculation by the witnesses that easily could have been handled during trial. And had they been, the only claims in the case would not have incurred a delay. But he, on June 13th, he said, I'm even withdrawing those, correct? Right, right. So the only reason we're counting from June 13th instead of March 3rd is because counsel was agreeing to these continuances for the state. So the state got 93 days of counsel in this case. So at the time we were at 103 days, the court offered to set the case within the following 17 days, did it not? It did. And was it the defense who objected to that or the state? That was the state. The state objected to that. The state wanted July 29th, and the state had two options there. They could have agreed to it a day within 17 days, or they could have invoked Subsection C of the Speed Trial Act. Did they do that and ask for 60 additional days? Right, and they didn't do that. And at no point did they allege that they would have had any difficulty getting the witnesses in the court in the 17-day window.  So was the state asserting its theory by doing that in terms of to whom the delay would be attributed? I believe so. The state was, you know, they wanted to take this position that this was going to be defense delay. To the next trial date. To the next trial date, and they were going to stick with it. And the court even told them directly, we all know the risks that are involved here, and the state chose to take those risks. So this was an intentional act by the prosecutor to push the case beyond the 120-day period. Was there an objection by defense, though, to that date? Well, he didn't say the word objection, but what he did say is I'm going to file a motion for discharge in 17 days. It was pretty clear that he wanted a trial date within the term. Yes, and it was pretty clear what his position was as to when the term ended. So this isn't a sandbagging case where the judge in the state mistakenly set a date on 121 and the defense counsel doesn't say anything. He did make the comment that his strategy is that if they won't have time now, they're not going to have time to get these all ruled on. Well, they ought to have time to rule on 300 statements, but his point, I think, was that they didn't. There's nothing wrong with it, is there? I mean, the defense attorney can, as long as he is not sandbagging, he can push the case. Sure, and that's what speed trial statute is for. By the time we get to June 13th, and not that this number is any less onerous, but aren't we down to about 83 statements as opposed to 300? Because the states had now two opportunities to reformat or whatever they called it, their request. So they were pulling conversations or statements, weren't they? Yeah, I'm not entirely sure how many statements exactly were left as of June 13th. And it also got cut down a lot because the judge ruled that most of the people that they were trying to bring statements in weren't part of the conspiracy. So, yeah, it may not have literally been hundreds as of June 13th, but it was a lot, and it was a lot more than they ever actually used. Is that relevant, the number that were left at that time? I don't think so. Ultimately, only to the extent that there are equities involved in this issue, I think. But ultimately, legally, no. The fact is it's a state's motion and it's not resolved. When you say there are equities involved in this issue, what do you mean? Well, things like the Majors case and the Calhoun case, where for reasons that the court certainly don't explain, we can go to day 122 because the defendant withdrew his guilty plea on day 119. That kind of thing. The argument is that here there were 17 days, not 3, not 5, 17, and the trial court should have, quote-unquote, moved heaven and earth and set it within that term. And, in fact, was willing and able to do it. What about the other litigants who are out there, who have that date or those dates preserved to have their cases heard? We don't know, correct? It is pretty routine, though, for cases to be bumped or cases that are close to the speed of trial term. That's not unusual. In this case, we don't know, do we? Well, we don't. But I think at that point, if there was a problem like that, then the state could have made a record of some sort. There's no record of anything like that, though. As far as we know, all that we have is the judge said, I can do it. He didn't say he had a vacation schedule. He didn't say that he had to go to classes somewhere. He said he would do what he could. Yes. He did characterize it as a large effort, but he could do it. And the state said, no, we don't want you to. So, panelists, do you have any further questions? If I could ask that you reverse defense convictions and discharge. We'll have an opportunity for a response. Thank you. Ms. Schwinn. May it please the Court. Counsel. Good morning, Your Honors. My name is Kristen Schwinn, and I represent the people in this matter. Touching briefly on what Your Honors discussed, the speedy trial is an issue of whether or not the defendant caused a delay, which has the effect of impeding the administrative process of the courts. And in this case, on January 6th, when the defendant filed what was akin to a motion to suppress, he took the trial date off the court calendar and caused that to be the delay. Now, even if that particular motion had been resolved within a month, and, again, it's because of all the dates floating in this case, I'm not exactly sure when that basic motion was resolved. If it was resolved within a month, is it the State's position that this case could have been tried two years later and it still would have been his responsibility because he took it off that first date? No, Your Honor. I believe both the people below and the Court, and I believe the case law says it's a reasonable trial date. It's a reasonable trial date to get it back on the call. Well, here in Delaware, there's 17 days left, correct? Yes. As of June 13th. And with everything that was set on the record aside, the trial court did say, I can try this case next week. Why didn't the State say, let's try it next week? Well, the State's position was the court offered July 22nd as the date, and that was the date that the court offered. He had opened on his calendar. Yeah, he had opened on his calendar, and that would be reasonable. The court, I believe, Justice Buchheit, as you mentioned, the court said, well, I could, I could move heaven and earth. And I believe Justice Hutchinson, as you mentioned, the record doesn't really show what that means. And what we do know from the record is that the court offered July 22nd. That was his first open date. That was his first open date. And the case law doesn't say that the court has to move heaven and earth. The court has to move it in terms of reasonableness. But does the case law say that the court, the speedy trial, is told until the court's first open date? There is, no. There are cases out there about busy court calls. Yes. But we're talking about, does it say, okay, you will toll this, you get my first open date, and that is? Your Honor, I don't know if there is a case that's explicitly on point. I believe that there is a case, and I apologize, I cannot recall from which case it was cited in my brief, that talks about an older case where juries had terms and the defendant withdrew his demand and it was in the middle of a term. And the court found that setting it for the next jury term was reasonable, even though there was a current jury term pending. And potentially that could have been maybe a heaven and earth. But the court found that finding it delayed to the next jury term was reasonable. And that is taking into consideration, as the Illinois Supreme Court has found, the surrounding facts and circumstances as to why a delay is a true bill to the defendant. And here, in this case, the defendant's conduct or the defendant's motion caused the trial to be taken off the trial call. And it's not just the disposition of the motion, it's the mere filing of the motion. The motion prohibited the court from being able to go forward on that trial. And there's no question. But that still doesn't answer Justice Hutchinson's question about can we go out two years? What was reasonable? Wasn't it reasonable to have the state agree to this trial setting within that 17-day window? I would argue, to answer Justice Hutchinson's question, no. Depending, well, let me back up. It would depend on the surrounding facts and circumstances. If the question is, if I withdraw and the court and the people can set whatever date in the future, two years, three years, I would argue that that's not a reasonable date in order to accommodate the trial court, the defendant, and the purposes and intent of the Speedy Trial Act. In this case, we have a date that's the following month in terms of when the date was set for trial. Let me ask you this question. When the trial court said or commented, I intend to review the state, I haven't looked at any cases. Why not take a recess and go look at the case law instead of just sticking to your guns and saying this is our theory and, you know, whatever date you set, it's attributable to the defendant, which you now acknowledge is not the case. Now you're saying it's whatever's reasonable. I believe that in the motion for discharge hearing, there was a discussion about reasonableness, and the court said, you know, we agreed that it was not an issue of any trial date but a reasonable trial date. I will admit that when that position was taken by the state, the state didn't say reasonable, but in the follow-up motion to discharge, everyone was in agreement that it was a reasonable trial date. In terms of whether or not it was appropriate to take a short recess to determine the case law, well, as the people cited in the brief, there is case law that says that that kind of procedure was not an abuse of discretion. People v. Major says that the court can look at the surrounding facts and circumstances and find that if the defendant's actions caused the trial date to be taken off the call. But in Major, the defendant was the only issue. Here, shortly after this case is started, the state dumps about, and I'm using that word literally, of conversation transcripts in front of the judge who says, here, we're going to introduce all this. The judge says, I've got to look at it. You know, this isn't his only case. It's probably not his only speedy trial case. And that issue, with reference to those conversations, went on until June 20th, when the judge finally decided. The defendant wasn't responsible for that, other than the only way he, okay, I'll agree to let it all in. But why would that be appropriate strategy for defense counsel? Why can't he challenge it? Well, first, I had two questions there. The defendant did challenge those statements. I believe there were a number of court dates in December, up through January 6th, that discussed and argued about whether or not those statements met the Co-Conspirator Exception Act. And the defendant was successful in keeping some statements out. As mentioned with my opposing counsel, this was a case that had 32 co-defendants. There was a large six-month wiretap operation. There were thousands of calls to go through. And I believe, as the trial judge mentioned, I believe in the January 6th, but it could be in the December 30th court date. You know, the state doesn't have to make a pretrial motion, necessarily, to admit these all in. The state did. And, of course, because of the complicated nature, more proffers were needed to fully understand the relationship of the defendant to the other co-defendants, and whether or not they would be considered part of the conspiracy, or whether or not they would be in furtherance of the conspiracy. Okay, now let's stop right there. That answers one question, in a manner of speaking. So, doesn't this circumstance take this out of majors, where the state's got something pending, the defendant has the right to object, he is not stalling, he is not waiting until the seven days before trial or 48 hours before trial to do this. It is ongoing all the way. Where it tends to bog down is right about the 30th of December or the 6th of January, when the court says, well, you know what, your motion in limine pretty much looks like a motion to suppress, and maybe you better file one. Okay, now the defendant is the actor. When does that finish? I would respectfully disagree. There is nothing in the record to suggest that the state was not prepared to book trial on January 14th. Subpoenas were sent out. Everyone was proceeding as if trial was going to occur on January 14th. The fact that there had been a motion pending does not mean that the trial date would be pushed. There's nothing in the record to suggest that. Did the state ever move to withdraw and take the court's suggestion that these, or the innuendo, that these could be ruled on independently during the course of the trial? They did. Let me back up. The court did make that comment that these are statements that could be on the course of the trial. The record does not reflect, again, the record bears out that everyone was proceeding, that everyone would be going to trial on January 14th. The court mentioned that he was prepared to rule such that they were going to go to trial on January 14th. The fact that this motion continued, I believe, should not have any bearing as to whether or not what ultimately delayed or caused the delay to the trial. The defendant did not file his motion in limine that was a motion to suppress until January 6th, eight days before trial began, which is very close to a continuance of Majors, which was 15 days before the trial was set to begin. But we're not talking about days. We're talking about who started the ball rolling. And in Majors, the court found the defendant did this. This was the defendant's primary problem. The defendant is participating throughout here. And as the court is whittling down things and having hearings, other things come to the fore. How is this just the defendant's problem as it was in Majors? Because that's essentially the ruling in Majors. The defendant caused all of this. How is this just the defendant's problem? Well, in Majors, it might have been solely the defendant. But the case law says that if the defendant is an end part of the cause to the delay, it's to the defendant as well. And here in this case, again, not to belabor this point, but Mr. Carroll made a very generous gesture in May to the court and said that he agreed he'll go through these, and point by point go through and register his objections to each statement so it would save the court time, quote-unquote, time on the weekends. And then he withdrew that agreement. That's correct. And the parties— Should the defendant bear some responsibility for any additional delay as a result of withdrawing that agreement? Or is that just something that the defense attorney can do or cannot do? It doesn't have any effect on the term. Well, respectfully, I think that that might be a factor in circumstance that the court could take into consideration when determining whether or not that delay period is attributable to the defendant. It's the people's position that the fact that the defendant filed a motion which caused it to get off the trial call back in January, regardless of the disposition of that motion, that motion caused the court to be unable— excuse me, that caused the case to be unable to go to trial. So the defendant would be—the time would be told or attributed to the defendant until they can get back on the trial call. But March 3rd was the date that the court decided that motion, correct? Correct in—respectfully, correct in part. Well, the other two matters were still pending. Yeah, there was a— But the motion to suppress was decided on March 3rd. The defendant filed a standalone motion that had three legal arguments. The court decided some in part reserved ruling on others. And then the defendant indicated throughout that March until May that he wanted to wait until the co-conspirator statements were litigated to determine how he would proceed in the remainder of his motion. So I admit that there's a lot of intertwining between March and May, but what is apparent is that the defendant had a pending motion. The defendant agreed to those continuances, separate from the fact that his original motion caused it to get off the trial call. And again, these are all facts and circumstances that the court can take into consideration when determining whether or not to attribute the delay to the defendant. And the standard here is abuse of discretion. And based on the court's ruling and the surrounding facts and circumstances, it's the people's position that the court didn't abuse its discretion. He cited a number of factors. He looked at the entirety of what had gone forward and found that the delay was attributable from June 13th up until the trial date. Obviously, the trial date didn't go, but until that time. Okay. Now, on June 20th, on June 13th, defendant counsel said, I'm withdrawing my agreement. He didn't say he didn't look at them. He just said he continues his objection to them. And the court then says, all right, I've got to decide this and I'll do it in seven days, which the court did. On June 20th, a decision was made. So I'm going to give those seven days to the defendant, against the defendant, because I'm objecting so he is in some way contributing. But on June 20th, we still have 17 days. July 22nd and July 29th are outside of 17 days. And he said he would move heaven and earth. So why is that attributed to the defendant at that point? There's nothing else pending. Nothing. Respectfully, I don't believe the case law requires a court to move heaven and earth. If it can, why doesn't it? They weren't jumping up and down and saying, we want a trial and we want it now. The judge says, I can do this. The record says I will move heaven and earth. That's all the record says. What we know is the trial court offered his available date of July 22nd. And what we know is that the case law says, doesn't, excuse me, the case law does not suggest a court has to move heaven and earth. And I cite, and I apologize, I can follow up. Just the phrase connotes that it was going to be very difficult. Yes, that's correct. That's correct. But we're balancing the rights of the defendant to a speedy trial here against some minor inconvenience, perhaps, of the judge, if the judge is willing. I mean, why not? Well, how about this? Go ahead. Well, the judge even said, I'll work late nights and weekends if that's what it takes. That's what judges are supposed to do. But seriously, we're balancing some rights here, are we not? Well, we're talking about a statutory, not a constitutional right here. True. That's correct.  Well, you can figure out who you want to answer. I'm sorry. Sorry. Would you agree that this was, to say the least, a sloppy procedure? Just the whole thing, the way the going over these statements again and again and again before you finally resolve this issue? I would agree that the record reflects that it was a complex case that required Complex or sloppy would take a pick, but that's on the state, not the defendant. In terms of promotion for the co-conspirator statements, but it is on the defendant when he chooses if he wants to litigate his Miranda, and that caused the case to get off the trial call in light of the fact that everyone was operating under the assumption that they were going to trial on January 14th. Subpoenas had been sent out. Things had been moving along. The fact that that had been taken off the trial call caused a delay, and it is the people's position that based on the case law, it would be to the next reasonable trial date, not a two-year. And in this case, he did not get a two-year date. He got a month and change in addition. And so for those reasons, we don't believe that the trial court abused its discretion in attributing the delay to the defendant, and we ask that this court affirm the judgment and conviction. Thank you. Mr. Hamill, I'm not directing traffic, so if you want to come up here and take your best shot. I just have a few things. Most of the things I think I've already said, but just to clarify, the defendant's motion to suppress statements was resolved on March 3rd. And as of March 3rd, the only two defense claims that were still pending in this case were whether or not a police officer could testify to seeing a shotgun in the defendant's bedroom and whether or not certain hearsay conclusions could be testified to saying that the defendant experienced a downturn in his business. Neither one of these had anything to do with co-conspirator statements. I haven't been able to check exactly what the defense counsel said. I know the state made reference to it, that he said he wanted his claims to be heard after the co-conspirator statement. I don't remember exactly what the counsel said. Well, regardless of that, he withdrew them. He said, I'm withdrawing them. He did. Relying on a speedy trial term, right? Correct, correct. From March 3rd to June 13th, the state was on bonus time for 90 days. But the state was still attempting to pare down these statements, whether it be because it's listening to what's happening in other courtrooms or in this courtroom with reference to other defendants or whatever the case may be. The state is still paring things down, and we get down to another number that is still pending on, I guess it's the May date, when everybody says, okay, let's take a step back. Let's all go through these. It's not the judge's own responsibility. Again, I'm paraphrasing. But then on June 13th, he says, I can't agree to anything. How is that now the rest of it being a reason for delay on the part of the defendant? At the point, the defense counsel has no business agreeing to his statements, really. I mean, he shouldn't be. What they were asking him to do here was forfeit objections. Well, if you look at what you say in your brief, the defense, the state said, no, Judge, he can still preserve his objections. It's just this is the specific objection. Which cases do you have, which statements do you have the specific objection to that would not have removed his general objection? I think it would. I mean, if he's making a specific objection based upon his review. Well, his objection to each and every one of the statements was, at that point, the statement did not further the conspiracy. In order for him to agree to any of those statements, you would have to weigh his objection that it did not further the conspiracy. He would be giving that up. I think counsel made the right call. I mean, when he came in on the 13th, he realized that he really couldn't do this while preserving his objections. If counsel had come in on June 13th and said, okay, I don't object to this statement, this statement, this statement, and if I were to raise on appeal this trial court error in allowing those statements, I assure you the state would be telling you I can't raise that. Well, it's an interesting question because the only issue on this appeal is the speedy trial term. And so there's no objection to any of the statements in your appeal. Well, there isn't now. Right. Although the state ended up using a lot fewer statements than they ever were trying to as of June 13th. How many of the co-conspirator or the person's deemed to be co-conspirator trials had gone by the time this case went? I have no idea. I know that a lot of them had pled. Were they all severed? Were they all individual? They were all severed. We're talking about 32. Some of the ones who testified had already had plea agreements that they were testifying, but I don't know about anybody else. Well, would you agree that has no effect on an individual's term? The number of defendants has no bearing on whether or not the defendant should be brought to trial within the term, correct? That's correct. That's correct. I mean, you know, the term is there for, I think, is designed to be long enough for you in the most complex cases. So unless Your Honor has any further questions, I ask that you reverse the defense's directions and discharge him from prison. Thank you. All right. Thank you, counsel, for your arguments this morning. We will take the matter under advisement. We're going to take a short recess to prepare for our next case.